Wow. So, until all the council get comfortable at the council table, the next case on our docket is, it's either Kravach, I don't know if I'm pronouncing it right, Kravach versus King County at all. And for, for appellant, we have Robert, and is it, did I pronounce Kravach correctly? It's Kravach. Kravach. Okay. Good morning, your honors. And may it please the court, Robert Allen Bouvette Jr. On behalf of the appellant, Amber Kravach, I'd like to reserve five minutes of my time for rebuttal today. The great former president, Abraham Lincoln, once posed a riddle to a crowd, asking them, how many legs does a dog have if you call its tail a leg? When the crowd answered five, he corrected them that the answer was four. Because of course, calling a tail a leg does not make it so. Questions of standing that are presented by this appeal have frequently called to my mind this exchange. Because here the government has essentially taken the position that by calling something voter intimidation in violation of one set of laws, they can thereby make it so. But counsel, your client didn't actually violate the law that is being challenged. I mean, it's as if I got a parking ticket and I challenged the constitutionality of the, you know, maximum speed in the area. If you have done only one thing wrong and there is a separate statute that deals with that one thing, I don't understand how you can have standing to worry about something else that isn't happening to you and that you haven't violated and that you don't express any intent to violate. Well, in fact, Judge Graber, my client, has expressed an intent to engage in activities which would arguably be within the scope of the electioneering laws. Well, they deal with distance primarily. And here, as I understand it, the signs were well outside the prohibited area under the electioneering laws and were on either public property or property with the permission of the owner. So there's no violation there. She's complaining about something that isn't applied to her. Well, in fact, Your Honor, the two instances in the record of photographic evidence of the signs reflect that they are, in fact, within the 25-foot radius established by the electioneering laws. Some of that evidence was attached to the ---- I'm sorry. The complaint asserts that the signs were at least 50 to 100 feet away from the drop boxes. Well, that goes, I think, directly to the district court's error in this case, Your Honor, because we submit that the district court misinterpreted the allegations of our complaint, which were that Mrs. Kraybach instructed these signs to be placed in one area. However, that is not what happened on the ground. She was not directly involved in distributing the signs. Many of them did end up within the 50 feet or, excuse me, the 25 feet. Some did not. The record is fairly unclear as to the entirety of the signs. However, there are two clear instances of evidence in the record of signs within 25 feet of drop boxes. One of those was attached to the King County Sheriff's report, which was, of course, attached to our complaint and incorporated into the pleadings. So I think for the district court to have essentially made a factual conclusion that these signs were not placed within the 25 feet, it speaks directly to the error here. I think either the court misinterpreted our allegations or simply reached factual questions that it was not properly situated to reach at a preliminary injunction stage because those questions are, in fact, intertwined with standing and the merits. Can I ask you about mootness? Why, as I read the preliminary injunction motion, it was focused on an election that has passed. And I don't understand why. I understand why maybe your case is not moot. You've asked for broader relief in the case in general, and so it can continue. But why is this preliminary injunction that was about a prior election still a live issue? Respectfully, Your Honor, the motion was not limited in that way, and nor was the complaint. Well, I agree about the complaint. Let's talk about the motion for preliminary injunction. Well, the reason I referenced the complaint is that we essentially requested in the motion for preliminary injunction the very same injunction as requested in the complaint. That is a verbatim quote from our prayer for relief in the motion for preliminary injunction. And we argued in that motion that despite the fact that the election would be over with come November 2022, that the chilling injury that my client suffers from having a well-founded fear that this statute will be enforced against her will continue on well beyond that election. We explicitly argued that the chilling injury would continue indefinitely. So I read that sentence, I think, many times that I think is the one you're talking about, and it seemed like you were saying the State really has no injury here, but we have an injury and I understood it to mean basically the injury we already would have had of not being able to participate in the 2022 election won't be fixable. I don't really know that that sentence was saying there's a future election. I mean, she was so over and over. It's about I want to do this speech for the November 2022 election. Perhaps if I have a chance to review the record, I can address that in more detail on rebuttal. However, we did explicitly argue in the motion that the injury with which we are concerned is the chilling effect of the statute, combined with the threats of government officials that puts her in a well-founded fear that the statute will be enforced against her. Now, yes, I mean, the motion was focused on the 2022 election. That is the election that was at hand at the time. However, it's recognized in this circuit the Libertarian Party of Los Angeles County versus Bowen case is a good example where the chilling injury that my client suffers is sufficient to hold this case not moot. This court can order effective relief because she maintains the intent to speak out in future elections, as she has at every juncture in this litigation. She's never, never disavowed that. And nor have the state and county defendants disavowed enforcement of the electioneering laws. Now they've called it something else. But that could be continued. That could get litigated in the district court as you I mean, now you've amended your complaint to actually talk about the intimidation laws as well. Like the litigation going on in the district court seems like it could reach a more helpful answer than this P.I. does, which was only about the electioneering laws that you say shouldn't apply. They say don't apply. And I mean, why? Why should we be figuring out this P.I. appeal rather than just saying this P.I. issue is moot and go litigate your case in the district court? Well, Your Honor, because even if there were a technical issue of mootness, I think your question previous question went to we nonetheless fall under the established exception to mootness, being that this case would evade repetition but is bound to repeat. My client maintains the intent to speak out in future elections. There will be one later this year, in fact, if the court has made its determination. But don't we usually think that if a P.I. is moot, it's not going to evade review if the litigation is still proceeding and could just as this one could get resolved through the case as a whole? The issue there, Your Honor, is that it's going to take at least a year and a half, perhaps two years or more, to litigate this issue to a conclusion in the district court. Here we are. Did you get a – I think you requested a stay of those proceedings during this appeal. Did you get that stay? We did get that stay, Your Honor. So it's a little awkward for you to then say it's taking too long, right? You asked to stop it. Well, we're not necessarily in a position of saying it's taking too long because the window within which my client could offer this speech in any particular election is only 18 days. The relevant period for her to offer this speech is the 18 days preceding when people are actually voting, when the drop box is open. It doesn't make sense to go stick a sign somewhere next to a polling place or a voting center and say this drop box is under surveillance. The only time that my client would place those signs is the 18 days preceding the public actually voting. So to have this – And if we got closer to another election, if this is moot and you go back to the district court and don't get resolution in time and you're getting closer to another election, couldn't you file a PI that said my client is chilled in all elections and wants to give this speech in all elections? I mean, I don't read this one as saying that, but you could do that in the future and then litigate that, couldn't you, if you needed to get a PI later because it took too long? We could, but, again, we'd run into the same problem with having it adjudicated in a timely fashion for that election, unless I'm misunderstanding Your Honor's question. I think returning to the district court essentially puts us in the same endless cycle of asking the district court to rule in a particular time frame, hoping that the district court will grant the relief that we sought, but that didn't happen as we are here today. And so to assume that we would need to take an appeal or might need to take an appeal, that can take a year and a half or two years or more. We've essentially got 18 days to engage in this speech, and so if we're sent back to the district court, I submit we will be back here again in perhaps a year and a half or two years arguing the same mootness issue. Well, probably, though, if you were back, the claims would be more comprehensive. They'd match better what the government is saying because I think you have now amended your complaint since this PI to include both types of statutes, right? Well, we have, but I'd like to point out that the threat that the government has posed here is really not even a necessary factor for this court to find that there is a credible threat of enforcement. It has been frequently held that where there is a statute which prescribes the intended conduct and where there is a reasonable fear that that statute will be enforced, whether there is a threat or not, the plaintiff has a credible threat of enforcement that is sufficient for standing. Perhaps more like the facts of this case, it's been held that in an instance of general warning of enforcement, like in the Tingley v. Ferguson case or in the Libertarian Party of Los Angeles case that I mentioned, that is sufficient. The government doesn't have to come out and say we will prosecute you pursuant to one set of laws to confer standing on you. If your conduct is within the reach of the statute and someone is threatening to initiate criminal proceedings against you, then I'm not sure how you could not have a well-founded fear of enforcement. And I do see that I'm within my five minutes, so unless the court has any other questions at this time. Well, I have a question. If the initial election is over, if you can't get relief on that, then you might want relief on some future election. Why shouldn't this matter now be dismissed without prejudice to your refiling? Well, Your Honor, because we would submit that the legal issues are fairly crystallized here. There's really no reason to bring this back another day to decide what we submit are momentous issues of a person in the law. We maintain an ongoing request that this Court can address in terms of providing relief for future elections. We are within the established exception to the mootness doctrine. This case typifies, in fact, why elections cases so frequently fall into that exception because they present important issues that cannot be litigated in the time constraints that are imposed. So simply as a matter of judicial economy, I'm not sure why it would make sense to bring this up again in a few years. Great. Thank you. Thank you. Good afternoon. And may it please the Court, Anne Summers, on behalf of King County and King County Director of Elections, Julie Wise. I intend to address mootness and then standing. This interlocutory appeal of the District Court's denial of plaintiff's motion for preliminary injunction is moot because the harm that she alleged and the relief that she requested was specifically tied to the November 2022 midterm elections. No facts were presented to the District Court in support of the motion that she intended to post signs for future elections beyond the midterm election. In her motion, her declaration, and her proposed order, she repeatedly referenced specifically her desire to post signs for the midterm election but made no mention whatsoever of future elections. Now the 2022 midterm has come and gone, and this Court can no longer grant her effective relief in regard to the alleged harm that she presented. Now the capable of repetition yet evading review exception should not apply in this case because the case is still being litigated in the District Court. The issues will not evade review as the parties continue to litigate the claims and the counterclaims. And that was the reasoning for this Court declining to apply that exception in Disability Law v. Meyer and Medicine v. McCullough, and that same reasoning was applied by the Tenth Circuit in Fleming, the Seventh Circuit in Stone, and the Second Circuit Independence Party. Those were all election cases, but because the case is still being litigated in the District Court, those courts concluded that the issues would not evade review, and there was no reason to apply that exception to the mootness doctrine. Counsel, let me ask you a question if I may. What is your answer to the argument made by appellant that they have a continuing request for relief in future elections? I think the record just does not support it. When you, in all of her submissions to the District Court, she specifically references the November 2022 election and says absolutely nothing about future elections. I mean, throwing the clause and future elections in would not have been difficult, but she didn't do it. So there was no reason for the District Court to put on notice that she was concerned about posting her signs beyond the November 2022 election. Now that she's asserted that she wants to for future elections, that makes the issue capable of repetition, but it's not going to evade review. I cannot recall. Does the amended complaint talk about future elections? I believe the first amended complaint and the second amended complaint both refer to future elections. That's in part why it won't evade review? Exactly. Okay. Turning to standing, the District Court correctly determined that Mrs. Craback lacked standing to challenge the only state statutes that she challenged in her initial complaint. It's the plaintiff's burden to establish standing, which is a rigid constitutional requirement. Evidence of standing is limited to what was presented to the District Court at the time of the motion. The operative complaint at the time of the motion only challenged the constitutionality of the election laws RCW 29A84-510 and 520, but she did not show a credible threat of prosecution under those statutes. There's no evidence that she had violated them or intended to violate them. There's no evidence that she – So it seems like maybe her evidence is the signs were taken down and this prosecution began. Now I know you say that's because of other statutes, not these statutes. Yes. But isn't that pretty intertwined with the merits? Like if you said, well, that's because of a loitering statute that had no relevance at all, we'd have to figure out, well, is that plausible? Like could it really be loitering? And don't we start having to ask merits questions to figure out whether the explanation you're giving is really what was violated compared to the explanation they're giving about why they think the signs were taken down? And at that point, isn't the standing analysis like kind of the merits analysis? So there's no evidence that she violated the statutes that she was challenging in her initial complaint. My client, I believe, was very clear in press releases that the signs were removed because they were viewed as being voter intimidation. Moreover, once we answered – But like what if your client had said something sort of ridiculous, like that signs were taken down because of the antitrust laws or the loitering laws or some other thing that had nothing to do with it? Then would we just say she has no standing? Or would we have to sort of get into, well, does that make sense? And what did she violate? Well, I think she still has to show for standing a credible threat of prosecution under a statute. So she has to show that she's either violated the statute or has an intent to violate the statute. And there's just no showing of that as to 510 and 520. Well, it also – I guess I read the initial complaint to say explicitly that she didn't violate the statute that she's challenging. In paragraph 31, for example, it says that they were removed even though it was without regard to the location and whether they violated this statute, which she had earlier said she directed people not to violate. So I think that's a little different than looking at what the defense says. It's looking at what the complaint says. Yes, not only that. It's beyond the complaint. I mean, the record sites I have is at 501 of the excursive record. She specifically instructed they be placed 50 to 100 feet because she was aware of the 25-foot radius. And again, in her deposition testimony, she testified, and this is at 225 of the excursive record, I was very intentional about making sure people knew where to put them beyond the 25-foot radius. So she can't show a credible threat under 510 when she's – there's no evidence that she intentionally placed them within 25 feet. And, in fact, all of her allegations are that she was taking care not to violate that statute. She's not an election officer. It's defined in that statute her signs would not constitute electioneering under 520. For those reasons, the constitutionality of those statutes presented an abstract question, not a live controversy for the court. So, counsel, would I understand that you would say we should dismiss for lack of standing? I believe you should. I'm arguing that for either mootness or lack of standing, you should dismiss for this court's lack of jurisdiction. Okay. Then how about the question that I asked your colleague on the other side of the case? If we dismiss now for lack of standing or for mootness, both Article III issues, wouldn't that dismissal be without prejudice?  And there's, frankly, nothing that has stopped her or is stopping her from seeking a new preliminary injunction for future elections based on her new second amended complaint where she has finally done as the district court directed and challenged the voter intimidation laws, and she has finally presented evidence of her intent to future elections. There's nothing stopping that from happening. And when counsel argues, well, this is going to evade review because it's taking so long, it's taking so long because of the strategic decisions she has made to seek this appeal, to seek a motion for extension, to file her brief, to seek a stay in the proceedings. Frankly, I think this is a fairly straightforward case. It could have been litigated on its merits by now. And if the Court has nothing further, I will hand it over to Mr. Smith. May it please the Court. Carl Smith on behalf of State Appellees. The relief that Mrs. Craibach seeks is doubly extraordinary. A preliminary injunction is an extraordinary means and facially enjoining the operation of state statutes is an extraordinary end. Mrs. Craibach is not entitled to that relief. State Appellees agree completely with the county that this Court should dismiss the appeal or affirm the district court on just disability grounds alone, but the Court could alternatively affirm based on the winner factors. Before I jump into likelihood of success on the merits, though, I want to take just a couple of minutes to talk about the operation and relationship of the statutes that we're talking about this afternoon. Counsel, before you get into that more complex argument, I have a simple question I've asked your colleagues. If we accept your position and dismiss, am I correct that that type of dismissal under Article III would be without prejudice? That's correct, Your Honor. And she can bring a new motion for preliminary injunction based on the facts alleged in her second amended complaint. Thank you. So in the operative complaint before the district court at the time of the motion for preliminary injunction, Mrs. Craibach challenged three statutory provisions. Two of those were electioneering provisions. Section 510A1A prohibits attempting to suggest or persuade voters to support or oppose a candidate within 25 feet of a ballot drop box. Section 520 prohibits electioneering by election officials at a ballot drop box. Electioneering and attempting to suggest or persuade are coextensive, and where you can specifically see this is in Washington Administrative Code, Section 434, 250, 100, subsection 6. That reflects the Secretary's interpretation that those two are interchangeable. In addition to those electioneering statutes, Mrs. Craibach challenged the constitutionality of the interference provision in Section 5101A4, which prohibits interfering with the exercise of the right to vote within 25 feet of a ballot drop box. What Mrs. Craibach did not challenge were the voter intimidation statutes at Section 620 and Section 630. Now, those have some overlap with the interference provision, but they each have an independent sweep. So the intimidation statutes are broader than the interference statute. There's no geographic limitation. If you engage in the prohibited voter intimidation anywhere, that's criminal conduct. But they also include specific means. The voter intimidation statutes apply only where the activity is done through menace, threat, force, or other unlawful means. Mrs. Craibach didn't challenge those statutes, and we know that those are the statutes that King County relied on because King County removed all of her signs without regard to where they were placed, and that's in the deposition testimony of Julie Wise. So I want to briefly address the likelihood of success on the merits, and I want to start with the First Amendment issues broadly. Yes, these statutes do capture some speech. Yes, these statutes are content-based, but they are constitutional because they satisfy strict scrutiny. There is absolutely a compelling governmental interest in protecting the exercise of the right to vote. The Supreme Court said so in precisely so many words in Burson. I am aware of no court that has ever questioned that that is a compelling governmental interest. These statutes are narrowly tailored to that compelling governmental interest. The interference provision could not be more narrowly tailored. The compelling governmental interest is in protecting the right to vote. The statute prohibits interfering with the exercise of the right to vote. It's a one-to-one relationship. With respect to the electioneering statutes, the Supreme Court in Burson held that such statutes are sufficiently narrowly tailored. Mrs. Craiblock attempts to distinguish Burson, arguing that that dealt with a polling site, and here we're dealing with election drop boxes. But reading the history that Burson relied on, one of the types of interference with elections that Burson identified these statutes as responding to was deterring voters from approaching the polling site in the first place. A voter can be deterred from approaching a ballot drop box just as easily as they can be deferred from approaching a polling site. So the analysis applies equally here. So it satisfies strict scrutiny. Everything that falls within these statutes satisfies strict scrutiny, so there is no unconstitutional sweep. So that does away with Mrs. Craiblock's over-breath argument. With respect to vagueness, this is not a challenge that allows elections officials to remove signs at their discretion, only if they attempt to suggest or persuade voters to support a candidate or ballot measure, which is very different than Mansky, where it just said political apparel and who knows what political is. Here we do know what advocating support of a candidate or ballot measure is. And with respect to interference, that end is clear. Yes, there will be sometimes some judgment calls. It will require consideration of context as to whether a particular activity interferes with the exercise of the right to vote. But that's not a constitutional vagueness problem. I'd point this court specifically to its recent decision in Hernandez v. City of Phoenix, which dealt with a police department's social media policy that prohibited social media posts that were detrimental to the organization that would impair working relationships. The court held that that was not unconstitutionally vague. Neither is interfering with elections. Finally, the penultimate point. On vagueness, we agree that Mrs. Craibach doesn't have to show in the First Amendment context that it's unconstitutionally vague in all applications. I apologize. That's the wrong point. The point I wanted to talk about was the as-applied challenge. It's a bit of a non sequitur. Because the allegations in her complaint said that she intended to place them beyond 50 to 100 feet, and she reiterated that in her deposition testimony, the statutes don't apply. But even without that, her signs clearly do not constitute electioneering. They don't advocate supporting a candidate or ballot measure. So the electioneering statutes clearly don't apply to her conduct. The interference statutes don't apply for the distance limitations. Even if she did place them within 25 feet, though, those laws would withstand strict scrutiny for the reasons I discussed. And the final point I wanted to make had to do with the remaining winter factors, which is even if this court determines that there is a likelihood of success on the merits, it doesn't automatically entitle Mrs. Krabach to a preliminary injunction. I'd point specifically, Your Honor, to Judge Graber, your recent decision in Nowani, where you acknowledged that there was a modest burden on the individual's First Amendment rights, but nonetheless said the public interest substantially weighed against that, and therefore affirmed the denial of a preliminary injunction. Unless the court has any questions, we ask that this court affirm. Okay, well, I have none, but Judge Graber, Judge Friesland. No, thank you. No. Thank you. There are no questions. Thank you. Okay. I think the appellant has a little time for rebuttal. Thank you, Your Honor. I'd like to address some of the points that the State raised as well as some of the questions that the court had during my presentation. First, if I can point the court to S.E.R. 17. The exact quote from our motion is, Indeed, the election will have come and gone by the second week of November 2022, but the injuries to plaintiff's constitutional rights will remain and other individuals will remain chilled. So I think it's fairly clearly expressing that this is the ongoing injury that we're concerned with. Similarly, in our complaint, we alleged an intent to place these signs in future elections. Now, we did not specify. But just like the plaintiff in Wilson v. Brammer, who was asked by the court, Do you intend to speak out in the next election? And he said no. But he didn't say anything about future elections. That's essentially the situation we have here. Some elections have come and gone since we've been before the court. Unfortunately, the past is the past. We are looking to the future. Hopefully, you know, hopefully we get a result in time for the 2024 election. But Brammer was not held to the duty to engage in this speech during every opportunity that he could have had. Also, as to the rationale for. It seems like the best you can do here today is to get us to say that the electioneering laws don't prohibit these signs. If you got that from us, how would it help you? I don't know that that's what we're seeking here today because arguably in prohibiting interference, they could be construed to prohibit signs that somebody might think would interfere with their exercising a vote. But that gets back to my original question. You know, it just seems like such a mismatch in your original complaint, saying nothing about the complaint that's currently before the district court. But that's, I guess, another way of asking what I was asking, which is suppose you are told you win, the signs can be closer, but it doesn't say anything about whether they can be intimidating, which is the only thing that the county was concerned about here. Well, first, Your Honor, there is an issue of fact in the record as to the intimidation theory and whether that was, in fact, what Director Wise relied on at the time that she removed these signs. But you haven't asked us, you haven't briefed. I mean, the briefing is all about the electioneering statutes and why you don't think they prohibit the signs. So we could say, OK, right, you're right, they don't. And now how does that help you with the next election or anything else? To be clear, we are not seeking a declaration by this court that the electioneering statutes do not prohibit the signs. We think it arguably does come within the scope of the statute. And to speak to Judge Graber's question, there is a mismatch here because the federal statutes are narrower than the electioneering statutes. The intimidation statutes, I should say, are narrower than the electioneering statutes. But a violation of the intimidation statutes would necessarily constitute an interference within the meaning of 510. Therefore, the fact that they call it intimidation may implicate another set of laws. It does not obviate the involvement of the electioneering laws, however. And that's, in fact, the whole problem with the electioneering laws. They are consciously intended not only to regulate interference with voting, but also electioneering, the presentation of information that may influence voters not only in how or whether to vote, but who they should vote for and what issues they should care about. The hypothetical was posed of, well, strike that. The scope of regulation that extends to speech, which is clear from the electioneering laws, appears to be the only net effect of those laws when compared to the intimidation laws. And that is, in fact, the very problem. The electioneering laws are attempting to continue in a regulatory tack that this Court held almost 40 years ago was improper in the Daily Herald Co. v. Monroe case. We submit and intend to prove in the District Court that the voter intimidation rationale is a mere pretext. We already do have evidence in the form of Director Wise's deposition testimony that equivocates about when she received this advice from the prosecuting attorney's office upon which she supposedly relied. So I think it was another error on the part of the District Court to accept uncritically the noblesse oblige of the county in saying that we're not going to invoke the electioneering laws. I would also like to speak to the instructions that Mrs. Craibach gave to her cohorts in distributing the signs. It is true that she intended for them to be placed further away in such a locale that would not violate the law. However, those instructions don't go to the message on the signs. It doesn't go to the content of what she was trying to say. It simply goes to her respect for the law and her intention not to violate it. But unfortunately, having put those signs into the hands of others to distribute them, that's not what happened. And the way that I read 510, it could be read as a strict liability statute. There is no mens rea in that statute, unlike in the intimidation statutes, which use specialized terms of art from criminal law. You can violate the electioneering laws without meaning to, and we submit that's exactly what has happened to Mrs. Craibach here if the government's position is upheld. Additionally, combining that speech with the people who distributed the signs doesn't detract from the protection that my client has in her speech. The other people who distributed the signs also have first-member protection in the speech, but that doesn't mean that the way that they distributed them is sufficient to defeat my client's standing and my client's message, which was recognized as a sincere and legitimate message in the public interest not only by King County but by the state in their arguments below. Well, I'm afraid your time has concluded. The Court peppered you with a lot of questions, so if you need another minute to wrap up, that's fine, but please do so. Your Honor, I think I'll leave it there. Excellent. Thank you. Thank you. This was an interesting and challenging case, and at this point the Craibach case shall be submitted. Don't tell me. It shall be submitted, and the parties will hear from us in due course. I think that concludes our argument calendar for today. So with thanks to all, we will adjourn for the day.
judges: GRABER, GOULD, FRIEDLAND